**UNITED STATES for the Use of SUN-BELT PIPE CORPORATION, Appellant,**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY; American Manufacturers Mutual Insurance Company, Appellees,**

**and**

**Lumbermens Mutual Casualty Company, Defendant.**

**No. 85–1209.**

United States Court of Appeals, Fourth Circuit.

Argued Nov. 5, 1985.

Decided Feb. 26, 1986.

Robert D. Daniel (Saccomanno, Clegg, Martin & Kipple, Houston, Tex., Winthrop A. Short, Jr., Kaufman & Canoles, Norfolk, Va., on brief), for appellant.

Guilford D. Ware (Joan E. Schwarzkopf, Crenshaw, Ware & Johnson, Norfolk, Va., on brief), for appellees.

Before SPROUSE and SNEEDEN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

This is a suit against the sureties on a bond under the Miller Act, 40 U.S.C.A. §§ 270a–270d. Sunbelt Pipe Corp. sold dredging pipe to Merritt Dredging Co. for use in performing dredging work in Norfolk Harbor under a contract with the United States Army Corps of Engineers. The district court found that the pipe was purchased as part of Merritt's capital equipment and was not "material" within the meaning of the Act or of the bond.

We affirm.

## I.

In late 1983, the Corps of Engineers solicited bids on a contract for maintenance dredging in the harbor at Norfolk, Virginia. The contract was "set aside" for an award to a "small business" under the auspices of the Small Business Administration. The contract was awarded in February 1984 to Merritt, a qualified small business.

Pipe is indispensable to the performance of a dredging contract. It is the means by which slurry is carried from the area being dredged to the spoil area ashore. The pipe is manufactured and shipped in relatively short lengths. These short lengths are welded together near the job site to form a continuous pipe for the transportation of the slurry.

Because of concern about the rules of the Small Business Administration, the Corps of Engineers insisted that Merritt not lease pipe from a non-qualifying business, and that Merritt, itself, acquire the necessary pipe. Merritt made the neces-

sary arrangement to purchase the pipe from Sunbelt and had it shipped to the Higgerson-Buchanan Yard in Chesapeake, Virginia.

In preparation for the dredging work, Merritt had some of the pipe welded into 1,000 feet lengths. Before completion of the fabrication of the pipe and, of course, before commencement of any dredging, Merritt filed a petition in bankruptcy. Merritt owed Sunbelt some $226,000, the purchase price of approximately 12,000 feet of pipe. Sunbelt apparently believed that its claim would be protected by the Miller Act bond, for it did nothing to secure and perfect a state lien on the pipe.

The pipe remains at the Higgerson-Buchanan Yard.

## II.

For public works of this sort, the Miller Act requires a performance bond for the protection of the United States and a payment bond for the protection of suppliers of labor and material to the project. 40 U.S.C.A. § 270a. A Miller Act payment bond does not protect the vendor of capital equipment, such as the dredge.

■ In a construction contract, the concept of "material" most obviously encompasses things which will be incorporated in the project itself, such as steel beams, brick, window frames, flooring and roofing. It has a broader reach, however, for it includes expendable and other things reasonably expected to be consumed, or substantially consumed, in the performance of the work. A thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs is a part of the contractor's capital equipment, but something which is reasonably expected to have no utility or economic value to the contractor after the completion of the work may be classified as material.

■ The Miller Act was designed to replace reliance by materialmen upon state created liens. *J.W. Bateson Co. v. United States ex rel. Board of Trustees*, 434 U.S. 586, 589, 98 S.Ct. 873, 875, 55 L.Ed.2d 50 (1978). Its purpose was remedial and is to be given a liberal construction "in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co. v. United States ex rel. Calvin Tompkins Co.*, 322 U.S. 102, 107, 64 S.Ct. 890, 893, 88 L.Ed. 1163 (1944).

■ This liberal construction is illustrated by the significance attached to the reasonable good faith belief and expectation of the supplier. If the supplier reasonably believes, in good faith, that the material furnished is to be used in the bonded project, he has the protection of the bond. *United States ex rel. Westinghouse Electric Supply Co. v. Endebrock-White Co.*, 275 F.2d 57 (4th Cir.1960). A later diversion of material by the contractor to another use will not deprive the supplier of the bond's protection. *United States ex rel. J.P. Byrne & Co. v. Fire Association of Philadelphia*, 260 F.2d 541 (2d Cir.1958).

Similarly, in distinguishing between material and capital equipment, we approach the problem from the perspective of the reasonable expectation of the supplier. The extent of expected consumption of the things on the project is to be regarded from the supplier's point of view. *Byrne*, 260 F.2d at 545; *Boyd Callan, Inc. v. United States ex rel. Steves Industries, Inc.*, 328 F.2d 505, 510 (5th Cir.1964); *Ibex Industries, Inc. v. Coast Line Waterproofing*, 563 F.Supp. 1142, 1146 (D.D.C.1983). A supplier who shows that he reasonably believed that the material would be consumed in the project and, because of that belief, did not seek the protection of a lien under state law, is protected by the bond. This is so whether or not the material was actually consumed. *See Byrne*, 260 F.2d at 544.

## III.

The district court resolved that crucial question against Sunbelt. It was a factual finding for which there is abundant evidentiary support, and it was not clearly erroneous.

There was expert testimony that dredging pipe is not usually consumed in the performance of a dredging project, and is commonly regarded as part of the dredger's capital equipment. While the wear on the pipe would vary with the type of material being· dredged, there was testimony that dredging the quantity and type of material to be removed from Norfolk Harbor would have occasioned only negligible wear. Dredgers commonly take their pipes with them for reuse. One who did not could not remain competitive.

Sunbelt's only attempt to show a reasonable expectation of consumption of the pipe in the performance of the project is founded upon a claim of substantial depreciation of the market value·of the pipe upon fabrication. After fabrication, it is worth less to a potential purchaser intending to use it at a distance, for he must undergo the substantial expense of cutting it into manageable lengths for transportation. Sunbelt contends that this results in a depreciation of the market value of the pipe of approximately two-thirds.

That may be, but the pipe, after fabrication, still has substantial economic value for one wishing to use it on another project even though it must be cut into short lengths for transportation. It would have even more economic value to one having a contract to perform dredging nearby, if he could float the pipe to the new job site without cutting it up.

Sunbelt's reliance is upon *United States ex rel. U.S. Rubber Co. v. Ambursen Dam Co.*, 3 F.Supp. 548 (N.D.Cal.1933). There a specially built gravel conveyor was held to be "material" within the meaning of the Act. The district judge found that there was such a small chance of finding any other project to which the conveyor could be adapted that it was "simply junk." *Id.* at 554.

There is little comfort for Sunbelt in that case. Because transportation to a distant job may require the owner to go to the substantial expense of cutting it into short lengths, the market value of the pipe may be substantially less than that of new, un-fabricated pipe. Nevertheless, such pipe is commonly reused in the industry. It is cheaper to cut it up and transport it than to purchase and transport new pipe. The saving is substantial when expert testimony indicated that a dredging contractor who did not reuse his pipe could not compete. Welding the pipe together may reduce its market value, but it does not alter the fact that it is reuseable or the fact that, in practice, it is reused.

Fabrication of the pipe into longer lengths cannot be equated with consumption. Since Sunbelt had no reasonable expectation that the pipe would be consumed in the performance of the contract, it is not a supplier of material within the meaning of the statute or of the bond.

AFFIRMED.