United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 25, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-40825

_____

WEEKS MARINE, INC.,

Plaintiff-Appellant,

versus

FIREMAN'S FUND INSURANCE COMPANY

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas

_____

Before JOLLY, WIENER, and, BARKSDALE, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Weeks Marine, Inc.("Weeks") appeals the district court's order denying its motion for summary judgment and granting Defendant-Appellee Fireman's Fund Insurance Company's ("FFIC") motion for summary judgment. We reverse and remand for entry of judgment in favor of Weeks.

## I. FACTS AND PROCEEDINGS

This surety contract dispute arises from dredging work that Weeks Marine completed for now-bankrupt shipbuilder Friede Goldman Offshore Texas, L.P. ("Friede Goldman"). In April 1998, Petrodrill Construction, Inc. ("Petrodrill") contracted with Friede Goldman ("the shipbuilding contract") for the construction of a semi-submersible drilling vessel ( "Hull 1829"). In conjunction with the

shipbuilding contract, FFIC issued an $84 million Labor and Material Payment Bond ("the bond") to Friede Goldman. Under the terms of the bond, FFIC as surety and Friede Goldman as principal are "held and firmly bound unto Petrodrill Construction" as owner and obligee, for "the use and benefits of claimants." A "claimant" is defined in the bond as

> one having a direct contract with the Principal or with a Subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the Contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract.

Friede Goldman began construction of Hull 1829 at its shipyard in Pascagoula, Mississippi but eventually elected to complete construction at another shipyard in Orange, Texas. The parties vigorously dispute the cause of the move: FFIC maintains that Friede Goldman merely wanted to "keep that [Texas] yard busy"; Weeks asserts that the move was "necessary," but offers no further explanation. It is undisputed, however, that all parties (including FFIC) expressly approved the move. In fact, Petrodrill and Friede Goldman agreed to a $3 million increase in the contract price, and FFIC consented to a corresponding increase in the amount of the bond. These modifications were memorialized in "Amendment No. 2" to the shipbuilding contract.

In connection with the move, Friede Goldman subcontracted with Weeks to dredge a slip extension at the Texas shipyard. Weeks

2

completed the dredging work and submitted an invoice to Friede Goldman in the amount of $654,671. To date, Weeks has not been paid for the dredging work; Friede Goldman filed for Chapter 11 bankruptcy protection several months after Weeks completed the dredging and is not a party to this suit.

Shortly after Friede Goldman filed for bankruptcy protection, Weeks filed suit against FFIC, invoking diversity jurisdiction and alleging that FFIC, as surety, is liable for the "labor performed and materials furnished" to Friede Goldman in connection with its performance of the shipbuilding contract. FFIC denied liability and the parties filed cross-motions for summary judgment. The district court granted FFIC's motion, concluding that "making FFIC pay Weeks would not serve the Bond's overriding purpose of preventing the attachment of liens to Petrodrill's new vessel." Weeks now appeals the denial of its motion and the grant of FFIC's motion.

## II. ANALYSIS

### A. Standard of Review

We review a grant of summary judgment <u>de novo</u>, applying the same standard as the district court.[1] A motion for summary judgment is properly granted only if there is no genuine issue as

---

[1] <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998).

to any material fact.[2]  An issue is material if its resolution could affect the outcome of the action.[3]  In deciding whether a fact issue has been created, we view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[4]

**B.   Merits**

The sole issue presented in this appeal is whether Weeks's dredging of a slip extension at Friede Goldman's Orange shipyard is "labor" "used or reasonably required for use" in building Hull 1829. The construction of an unambiguous surety agreement is a question of law.[5]  Surety agreements, like other contracts, are "interpreted to ascertain the obligations intended by the parties, gathered from the instrument as a whole."[6]  The liability of a surety is determined by the language of the bond.[7]  When, as here,

---

[2] Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

[3] <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

[4] <u>See</u> <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 (5th Cir. 1999).

[5] <u>Augusta Court Co-Owners' Assoc. v. Levin, Roth & Kasner, P.C.</u>, 971 S.W.2d 119, 123 (Tex. App.—Houston[14th Dist.] 1998, pet. denied).

[6] <u>G.H. Bass & Co. v. Dalsan Props.—Abilene</u>, 885 S.W.2d 572, 576 (Tex. App.—Dallas 1994, no writ).

[7] <u>Augusta Court</u>, 971 S.W.2d at 123; <u>see</u> <u>also</u> DEUTSCH, KERRIGAN & STILES, CONSTRUCTION INDUSTRY INSURANCE HANDBOOK § 16.2, at 267 (1991) (explaining that "[c]onventional bonds are private agreements governed by general principles applicable to any private or commercial contract" and noting that "[t]he rights and obligations

4

the surety agreement is related to another contract, the two instruments must be read together to determine the parties' intent.[8]

With these general rules of contract interpretation in mind, our analysis begins with the written terms of both the shipbuilding contract and the payment bond. The shipbuilding contract called for Friede Goldman to construct Hull 1829 for Petrodrill and perform all associated engineering, launching, and testing of the completed vessel. This contract defines "materials" as "all material and supplies, including without limitation all machinery, equipment, outfittings and spare parts...to the extent that same have been appropriated to, or incorporated in, the Vessel." The shipbuilding contract does not define "labor."

The bond prescribes the obligations of FFIC. The bond states expressly that FFIC is liable only if Friede Goldman fails "promptly [to] make payment to all claimants" "for all labor and material used or reasonably required for use in the performance of the Contract." As noted earlier, the term "claimants" is defined in the bond, which also defines "labor and material" to include "water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the Contract."

_____

of the parties to a conventional bond are thus determined by the terms of the bond").

[8] Arceneaux v. Price, 468 S.W.2d 473, 474 (Tex. App.—Austin 1971, no writ).

5

Even though they arrive at widely varying interpretations, both parties assert that the terms of these agreements are unambiguous. FFIC argues that the dredging work is not covered under the bond because Weeks did not provide "materials" that were incorporated in the vessel but undertook a capital improvement to Friede Goldman's shipyard. Weeks agrees that the dredging was not "materials" as defined in the shipbuilding contract, but insists that the work was "labor" "used" in the construction of the vessel. Weeks asserts that it qualifies as a "claimant" under the bond because (1) it had a direct contract with Friede Goldman; (2) it provided "labor"; and (3) the labor was used in the performance of the shipbuilding contract.

Our resolution of this contract dispute rests on the plain language of the bond and the uncontroverted record evidence. We have seen that, under the bond, a "claimant" is "one having a direct contract with the Principal [Friede Goldman]...for labor, materials or both, used or reasonably required for use in the performance" of the shipbuilding contract. The parties do not dispute that Weeks had a direct contract with Friede Goldman or that Weeks provided "labor." Rather, FFIC contends that the labor Weeks provided was not used "in the performance of the contract." For at least three reasons, we disagree.

First, in support of summary judgment, Weeks submitted the affidavit of Friede Goldman officer John Haley who stated that "[t]he labor and materials provided by Weeks" were "required by

6

[Friede Goldman] for the performance and completion of Hull 1829."

FFIC submitted no contradictory evidence on this crucial point.[9]

Second, FFIC itself acknowledged (in a letter to Weeks's counsel

denying the claim) that the dredging was "required in order to

fulfill [Friede Goldman]'s obligation under the [Petrodrill]

contract." Third, and most importantly, all of the parties,

including FFIC, expressly contemplated the move before it took

place, explicitly acceded to it, and increased the purchase price

and bond accordingly, as documented in Amendment No. 2. Whether

the move was necessary, or even prudent, is irrelevant; it was

unquestionably made "in performance of the contract."

Finding little support in the express terms of the bond, FFIC

relies on cases arising under the Miller Act and analogous state

statutes to support its argument that dredging is a capital

improvement and is not encompassed by a standard labor and material

bond. Under these cases, "material" includes "things which will be

incorporated into the project itself, such as steel beams, brick,

window frames, flooring and roofing."[10] "Materials" also includes

products that are not ultimately integrated into the project, but

_____

[9] The evidence FFIC submitted in opposition to Week's motion
and in support of its own motion for summary judgment included
copies of the shipbuilding contracts and payment bonds; a letter
from FFIC adjuster Fred Applewhite instructing Weeks's counsel on
the procedure for filing claims; a letter and completed proof of
claim from Weeks's counsel to Applewhite; and the affidavit of
Applewhite.

[10] Sunbelt Pipe Corp. v. United States Fid. & Guar. Co., 785
F.2d 468, 470 (4th Cir. 1986).

7

that are "reasonably expected to be consumed, or substantially consumed, in the performance of the work."[11]   Thus, capital equipment, including items that can be removed and used on subsequent projects, are not "materials"; only those consumable items that will "have no utility or economic value to the contractor after the completion of the work" are covered under statutory bonds as "materials."[12]

FFIC's reliance on these authorities is misplaced for several reasons.  First, and most importantly, Weeks is seeking payment for "labor," not "materials."  Weeks agrees that the pipes, tools, and heavy machinery used to dredge the slip are not "materials" covered by the bond; Weeks only seeks payment for labor, and then only labor that was "used or reasonably required for use" in Friede Goldman's performance of the shipbuilding contract. Perhaps understandably, FFIC largely ignores this fundamental distinction.[13]

Second, even if we were to accept FFIC's capital-improvement argument, the competent summary judgment evidence reveals that Weeks's dredging was not a capital improvement to Friede Goldman's

---

[11] Id.

[12] Id.

[13] FFIC asserts summarily that this "difference is irrelevant" and notes that "[w]hether the capital improvement was something that was created by labor . . . or a material, is irrelevant." This argument is unavailing for two reasons. First, the bond itself does distinguish between labor and materials, listing each as a separate qualification ("labor, material, or both"). Second, all of the case law that FFIC cites involves equipment and other tangible materials or repairs to such equipment.

8

shipyard.  In a supplemental affidavit, Friede Goldman officer John Haley stated that the slip at issue began to fill with silt within ten months following Weeks's dredging.  Haley further stated that the slip will "likely have to be dredged again" if Friede Goldman undertakes a project of similar scale.  Thus, Weeks's summary judgment evidence reflects that the dredging to extend the existing slip was largely "consumed" during the construction of Hull 1829 and would not likely last more than one year.[14]

The only evidence that FFIC proffered in support of its argument is the affidavit of FFIC claims adjuster Fred Applewhite, who stated conclusionally that "[m]aking a slip at a shipyard bigger by constructing a slip extension...is a capital improvement to [Friede Goldman]'s yard and clearly of a nature as to be available for use...for all of [Friede Goldman]'s projects."  On close examination, however, it is obvious that Applewhite's affidavit is merely a reiteration of FFIC's legal argument, i.e., that dredging is always a capital improvement.  Notably, Applewhite's affidavit is bereft of any explanation or reasoning as to how he reached this bald conclusion. It never even indicates that he personally inspected the slip.  "[S]uch conclusory, unsupported assertions are insufficient to defeat a motion for

---

[14] See, e.g., Seligman v. Comm'r, 796 F.2d 116, 119 (5th Cir. 1986) (noting that "one year rule of thumb" is "the prominent, if not predominant characteristic of a capital item" under Tax Code) (internal quotations omitted).

summary judgment."[15]

The litany of cases that FFIC cites in support of its argument is equally unpersuasive. All these cases stand for the undisputed proposition that the cost of <u>capital</u> <u>equipment</u> that is not "substantially consumed" during performance of a contract is not recoverable under a typical Miller Act payment bond.[16] As we explained, these cases are inapposite for three alternative reasons: (1) A cause of action under the Miller Act is not congruent with a claim under the particular language of a tailor-made bond; (2) Weeks is seeking to recover only for labor, not materials; and (3) the dredging at issue was, according to the uncontradicted statement of Friede Goldman officer John Haley, "substantially consumed" in the construction of Hull 1829. We again emphasize that Weeks, unlike the suppliers in the cases that FFIC cites, does <u>not</u> seek payment for pipes, machinery, tools, or

---

[15] <u>Marshall v. E. Carroll Parish Hosp. Serv. Dist.</u>, 134 F.3d 319, 324 (5th Cir. 1998).

[16] <u>Sunbelt Pipe</u>, 785 F.2d at 471 ("Since Sunbelt had no reasonable expectation that the pipe would be consumed in the performance of the contract, it is not a supplier of material within the meaning of the statute or of the bond."); <u>Transamerica Premier Ins. Co. v. Ober</u>, 894 F. Supp. 471, 483 (D.Me. 1995)("It is clear under the statute and case law that subcontractors and suppliers may not recover under a Miller Act payment bond for losses sustained to 'capital equipment,'" i.e., "any thing which may reasonably be expected to be removed by the contractor and used in subsequent jobs") (internal quotations omitted); <u>Ibex Indus. v. Coast Line Waterproofing</u>, 563 F. Supp. 1142, 1145-46 (D.D.C. 1983) ("Plaintiff cannot recover costs under the Miller Act for equipment that was not 'substantially consumed' during the construction project.").

10

equipment of any kind. The uncontroverted record evidence conclusively establishes that Weeks provided labor that was "used" in performance of the shipbuilding contract. The bond, drafted by FFIC, requires no more.

## III. Conclusion

For the foregoing reasons, we reverse and remand for entry of judgment in favor of Weeks in the principal amount of $654,671, together with any and all appropriate ancillary items, such as pre- and post-judgment interest and costs, including attorney's fees, if applicable.

REVERSED and REMANDED with instructions.