United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 23, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-11402

SNELLING AND SNELLING, INC.

Plaintiff - Appellee

versus

FEDERAL INSURANCE CO.

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
(No. 3:03-CV-2948-K)

Before JOLLY, DAVIS, & WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Snelling and Snelling, Inc., ("Snelling")
appeals the district court's order granting summary judgment in
favor of Defendant-Appellee Federal Insurance Co. ("Federal"). We
affirm.

## I. FACTS & PROCEEDINGS

Snelling, an employment agency, has one of its many offices
located at 150 Broadway in New York, New York, near the site of the
World Trade Center. This office provided personnel to various

---

[*]Under 5TH CIR. R. 47.5, the court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

businesses located in or near the World Trade Center. On September 11, 2001, many of that Snelling office's clients sustained physical loss or damage from the terrorist attack, as a result of which they were no longer able to accept Snelling's services.

At the time of the attack, Snelling carried a policy of commercial property insurance issued by Federal. The policy covered many of Snelling's offices, including the one at 150 Broadway. The policy comprises three main sections. The initial "Declarations" section establishes most of the general, conventional insurance coverage. The subsequent "Supplementary Declarations" section establishes additional coverages. The last section contains definitions and other policy language.

This appeal focuses on one of the additional coverages in the Supplementary Declarations, <u>viz.</u>, that for "Dependent Business Premises." The policy defines Dependent Business Premises as "premises operated by others on whom you depend to . . . accept your products and services . . . ." The parties agree that Snelling's World Trade Center customers fell within this definition, and that the policy does provide at least some coverage for losses caused to Snelling by the attack's injuries to customers of its 150 Broadway office. The parties vigorously dispute, however, the monetary extent of such coverage and thus the amount due Snelling. Snelling maintains that the policy provided up to $4,000,000 in coverage — the limit of insurance for damage to business income and loss of utilities in the Declarations Section

2

—— for damage to Dependent Business Premises. In contrast, Federal maintains that the policy limited coverage to $250,000 in the aggregate for Dependent Business Premises damages suffered by any one Snelling office, the amount set forth in the Supplementary Declarations Section.

In the weeks and months following September 11, Snelling's employees and agents engaged in discussions among themselves regarding the aggregate limit of the policy for damages to Snelling for destruction of its customers' premises. Eventually, in January 2003, Snelling filed a claim for $4,444,733, which included business income losses caused by damage to Snelling's customers serviced from its 150 Broadway office. In early July 2003, Snelling amended its claim to $3,956,143.[1] Several weeks later, Federal paid Snelling $250,000 as full payment for Snelling's claims.

In December 2003, Snelling filed suit against Federal for breach of state contract law and state insurance law. Snelling brought the suit in federal district court based on diversity jurisdiction. The parties conducted discovery and each moved for summary judgment. The district court made several findings of undisputed fact and decided, as a matter of law, that the policy provided a maximum of $250,000 in coverage for all of Snelling's

---

[1] Although there are varying accounts of the total amount asserted by Snelling, the parties agree that the claimed amount was in the millions of dollars.

3

business income losses caused by damage to its 150 Broadway office's Dependent Business Premises. As Federal had already paid Snelling $250,000, the district court granted summary judgment in favor of Federal, denying recovery by Snelling of any monies in excess of that amount. Snelling now appeals.

## II. ANALYSIS

### A. Standard of Review

The district court's decision to grant summary judgment is reviewed <u>de novo</u>.[2] A motion for summary judgment should be granted only when there is no genuine issue of material fact.[3] In determining whether there is a genuine issue of material fact, we view all facts and draw all inferences therefrom in favor of the non-moving party.[4]

The sole issue presented in this appeal is the total amount of coverage provided by the policy to Snelling for damages resulting from harm caused to the Dependent Business Premises of its 150 Broadway office. The interpretation of an unambiguous insurance policy is a question of law and is therefore appropriate for summary judgment.[5] If the policy is ambiguous and raises a

---

[2]<u>American Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.</u>, 352 F.3d 254, 260 (5th Cir. 2003).

[3]<u>Weeks Marine, Inc. v. Fireman's Fund Ins. Co.</u>, 340 F.3d 233, 235 (5th Cir. 2003).

[4]<u>Id.</u>

[5]<u>See</u> <u>Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.</u>, 391 F.3d 639, 641 (5th Cir. 2004).

4

material issue of fact, however, summary judgment is not proper.[6]

## B. The Merits

The interpretation of Snelling's insurance policy is governed by Texas contract law.[7] In construing a policy, courts must strive "to give effect to the parties' intent as expressed in the policy's plain language."[8] If an insurance policy "can be given only one reasonable construction, the court must enforce the policy as written."[9]

A court views contract language in light of the surrounding circumstances to ascertain the meaning attached "by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended to mean."[10]

### i. The Policy

Applying these principles of contractual interpretation, our

---

[6]Amoco Prod. Co. v. Texas Meridian Res. Exploration Co., Inc., 180 F.3d 664, 669 (5th Cir. 1999).

[7]See Kelley-Coppedge, Inc. v. Highlands Ins. Co., 980 S.W.2d 462, 464 (Tex. 1998).

[8]de Laurentis v. United Servs. Auto Ass'n, 162 S.W.3d 714, 722-23 (Tex. App. 2005).

[9]Finger Furniture Co. v. Commonwealth Ins. Co., 404 F.3d 312, 314 (5th Cir. 2005).

[10]Watkins v. Petro-Search, Inc., 689 F.2d 537, 538 (5th Cir. 1982) (quoting Sun Oil Co. v. Madeley, 626 S.W.2d 726, 731 (Tex. 1981)).

analysis begins with the express terms of the policy. As noted, the policy provided coverage for losses incurred by Snelling as a result of damage to its Dependent Business Premises, i.e., Snelling's customers. The amount of coverage for Dependent Business Premises is limited by language in the final section of the policy:

**Dependent Business Premises**

We will pay for the actual business income loss and extra expense you incur due to the actual or potential impairment of your operations during the period of restoration, not to exceed the Limit of Insurance for Dependent Business Premises shown under Business Income in the Declarations.

This actual or potential impairment of operations must be caused by or result from direct physical loss or damage by a covered peril to property or personal property of a dependent business premises at a dependent business premises.[11]

Our study of the policy convinces us that there is only one section in the entire policy that specifies the "Limit of Insurance for Dependent Business Premises." That section is not the initial Declarations but the subsequent Supplementary Declarations. Thus, it appears that the policy treats its Supplementary Declarations as a subset of its larger, general set of "Declarations."

The Supplementary Declarations establish the following limit for Dependent Business Premises:

**Additional Coverage - Business Income**

---

[11]Emphasis added.

6

The Limits Of Insurance shown below are provided for the Coverages shown at no additional cost to you. These Limits Of Insurance apply separately at <u>each of your premises</u> unless otherwise shown. You may purchase additional Limits Of Insurance, and we will charge you an additional premium. If you purchase additional limits for any of these Coverages, the Limits Of Insurance shown in the Declarations will reflect your total limit, including the Limits Of Insurance shown below.

| Property Coverages | Limit of Insurance |
|---|---|
| BUSINESS INCOME- | |
| ANY OTHER LOCATION | $10,000 |
| AUDITORS FEES | $10,000 |
| CONTRACTUAL PENALTIES | $10,000 |
| <u>DEPENDENT BUSINESS PREMISES</u> | <u>$250,000</u> |
| LOSS OF UTILITIES | $25,000 |
| POLLUTION CLEAN-UP & REMOVAL | $10,000[12] |

The policy defines the terms "you" and "your" as referring only to Snelling.

When we consider these provisions together, we agree with the district court that the plain language of the policy supports only one conclusion — that the limit of coverage for damage to Snelling caused by injury to or destruction of its Dependent Business Premises is $250,000 per Snelling office — here, 150 Broadway. The policy provides coverage of $250,000 for damage to Dependent Business Property, with the following restriction: "These Limits Of Insurance apply separately at each of <u>your premises</u> unless otherwise shown."[13] Both the policy's definition and the plain meaning of the quoted language indicate that "your" refers to

---

[12]Emphasis added.

[13]Emphasis added.

7

Snelling.  To argue that the offices of Snelling's customers somehow qualify as "your premises," as Snelling now asserts, is too great a stretch.  Ultimately, Federal and Snelling, both sophisticated parties, must abide by the plain language of the policy as reflecting their intent.

Further supporting the conclusion that $250,000 is the relevant limit, the "Limits of Insurance" provision states: "<u>The most</u> we will pay in any one occurrence, is the amount of loss, not to exceed the <u>applicable Limit of Insurance</u> shown in the <u>Declarations</u>."[14]  As previously discussed, the policy appears to use the term "Declarations" to include both the initial Declarations and the subsequent Supplementary Declarations.  In this case, the applicable limit of insurance for Dependent Business Premises losses is the $250,000 set forth in the Supplementary Declarations.  Snelling is thus entitled to collect no more than $250,000 for all of its income losses resulting from injury to or destruction of its 150 Broadway customers' premises in the 9/11 attack.

### ii.  Snelling's Arguments

Snelling raises many counter-arguments, but none overcome the plain meaning of the policy.  First, Snelling asserts that the "<u>applicable Limit of Insurance</u>" shown in the <u>Declarations</u> is the $4,000,000 figure appearing in the initial Declarations under the heading "Business Income [&] Loss of Utilities[:] Limit of

---

[14]Emphasis added.

8

Insurance."[15]  Based on its interpretation of the plain meaning of the term "Declarations," Snelling insists that it is entitled to recover up to $4,000,000 for all of the business income losses it sustained from damage to Dependent Business Premises serviced from its 150 Broadway office, subject only to the limit of $250,000 for any one Dependent Business.

Snelling's argument is not persuasive.  If the Limit of Insurance provision were intended to refer only to the $4,000,000 coverage limit in the Declarations section, the limits in the Supplemental Declarations Section would be superfluous.  The only logical interpretation of this provision is Federal's, <u>i.e.</u>, that the $4,000,000 figure in the Declarations covers only business income and loss of utilities caused by direct damage to <u>Snelling's own offices</u>.  Indeed, the $4,000,000 figure refers only to business income and loss of utilities generally and says <u>nothing</u> about business loss resulting from injury to <u>Dependent Business Premises</u>. In fact, "Dependent Business Premises" are discussed only in the subsequent Supplementary Declarations, in which coverage for damage to such premises is fully defined and limited by the "your premises" language previously discussed.

Second, Snelling insists that Federal knew how to use more specific language in writing its policy but did not.  Therefore, Snelling argues, Federal's failure to limit the language more

_____

[15]Emphasis added.

9

narrowly should be construed against it.  Specifically, Snelling argues that Federal lazily used the broad language of "at each of your premises unless otherwise shown" when it limited Dependent Business Premises coverage to $250,000, but used specific language, like "at each covered premises shown in the Declarations," elsewhere in the policy.  This variance is insufficient to create an ambiguity: As discussed, the plain (and only reasonable) meaning of "your premises" is Snelling's offices, not those of its customers.

Finally, Snelling contends that another form policy drafted by Federal in 1998 demonstrates that the 1994 form policy at issue in this case is ambiguous.[16]  This argument likewise fails.  Snelling was not aware of the 1998 Form when it purchased its policy, so it was not relying on any difference between the language of the two policies when it chose its coverage.[17]  More importantly, even assuming that the 1998 form demonstrates an ambiguity, this type of extrinsic evidence cannot be admitted for the purpose of

---

[16]At the time Snelling agreed to the policy with Federal, there existed a similar policy form drafted by Federal (the "1998 Form") which stated that "[t]he Limit of Insurance for Dependent Business Premises applies . . . separately to each occurrence, regardless of the number of dependent business premises that sustain covered direct physical loss or damage."

[17]Indeed, Federal asserts that, once a state's rating commission approved the new 1998 language, Federal stopped selling policies with the 1994 language in that state and began selling only policies with the new 1998 language.  Therefore, Federal never presented both the 1994 Snelling policy and the 1998 Form policy to customers for them to chose between the two.

10

demonstrating the presence of an ambiguity; that must be apparent within the four corners of the policy at issue.[18]

### iii. Number of Occurrences

Snelling further advances that, even if $250,000 is the applicable limit of coverage for all damage to Dependent Business Premises of its 150 Broadway location, it is entitled to recover up to $250,000 separately for damage to each 150 Broadway customer, with total recovery limited to $4,000,000, because the policy does not state otherwise. This argument fails as well: The policy's Supplementary Declarations unambiguously state that $250,000 is "the most" Federal will pay for Dependent Business Premises in any one occurrence. Snelling's only facially viable counterargument is that the Limits of Insurance, which are defined in the final section of the policy, explicitly refer back to the Declarations and not to the Supplemental Declarations. This counterargument is meritless. As already discussed, we are satisfied that the policy's references to the Declarations includes the Supplementary Declarations as a subset.

As an additional basis for its insistence that it may recover up to $250,000 for each damaged customer, Snelling asserts that the damage to each Dependent Business Premises can be characterized as a separate occurrence. Snelling cites cases and provides several

_____

[18]See Sydlik v. REEIII, Inc., 195 S.W.3d 329, 334 (Tex. App. 2006) (citing Sun Oil Co. v. Madeley, 626 S.W.2d 726, 732 (Tex. 1981)).

hypothetical situations in support of this argument, but these cases and hypothetical situations are inapposite. For example, Snelling points to <u>Goose Creek Consolidated Independent School District v. Continental Casualty Co.</u>, in which an arsonist started two separate fires at two separate places and two separate times.[19] <u>Goose Creek</u> does not support Snelling's argument, as it instructs that the number of occurrences is determined by the <u>cause</u> of the damage.[20] Likewise, in <u>U.E. Texas One-Barrington, Ltd. v. General Star Indemnity Co.</u>, relying on <u>Goose Creek</u>, we held that Texas law focuses on the immediate cause of damage when determining the number of occurrences.[21] Here, injury or destruction to Snelling's 150 Broadway customers in or near each tower resulted from the same cause — airplanes flying into the Twin Towers. Although <u>Goose Creek</u> and <u>U.E. Texas One-Barrington, Ltd.</u> could support an argument that the destruction of the towers by separate planes and at different times were two separate occurrences rather than one produced by a single terrorist attack — a theory under which Snelling might be entitled to recover up to $250,000 for damage to Dependent Business Premises in each tower — Snelling concedes that

---

[19]658 S.W.2d 338 (Tex. App. 1983).

[20]<u>Id.</u> at 341. Specifically, <u>Goose Creek</u> held that "where there are two fires at two different places with two separate causal factors, there are two loss occurrences." <u>Id.</u>

[21] 332 F.3d 274, 278 (5th Cir. 2003) (finding that pipe leaks were nineteen separate occurrences even though they were potentially caused by same event — installation of defective pipes).

12

it has never advanced this argument.  Under Texas law, the damage to each 150 Broadway customer cannot constitute a separate occurrence when, as here, the damage resulted from a single cause.

### III.  CONCLUSION

For the foregoing reasons, the order of the district court granting summary judgment to Federal is

AFFIRMED.