# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 22, 2008

Charles R. Fulbruge III
Clerk

No. 06-31020

WESTERN AMERICAN TRANSPORTATION LLC

    Plaintiff

NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA

    Intervenor Plaintiff - Counter Defendant - Appellee

v.

ROBBIE MORROW, Individually and doing business as Houston Trucklines, doing business as Western Intermodal Container Services; JOHNNY MONTEMAYOR, individually and doing business as Houston Trucklines, also known as Western Intermodal Container Services

    Defendants - Intervenor Defendants - Counter Claimant - Appellants

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 6:99-CV-2217

---

Before JONES, Chief Judge, and WIENER and CLEMENT, Circuit Judges.

PER CURIAM:[*]

    Robbie Morrow and Johnny Montemayor appeal the district court's grant of summary judgment in favor of National Union Fire Insurance Company of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Louisiana ("National Union"), an insurer for Western American Transportation, L.L.C. ("Western American"). We affirm.

## I. FACTS AND PROCEEDINGS

In 1996, Morrow and Montemayor entered into an agreement with Western American to operate a truck terminal in Houston, Texas under the Western American name and to lease trucks from Western American in exchange for all the revenues generated by the leased trucks. In December 1999, Western American sued Morrow and Montemayor, alleging, inter alia, that Morrow and Montemayor had violated the parties' agreement by diverting business and accounts receivable away from Western American. In its complaint, Western American alleged that Morrow and Montemayor had breached its contract and wrongfully withheld funds that should have gone to Western American, thereby committing theft and conversion. Western American sought and obtained a writ of sequestration.

Morrow and Montemayor answered and counterclaimed that Western American's allegations of theft and conversion were defamatory and asserted a claim for wrongful sequestration. Western American continued to retain a law firm to prosecute its original breach of contract claim against Morrow and Montemayor, but sought a defense from National Union against the counterclaims. National Union hired a law firm to defend Western American and reimbursed Western American for its fees and costs incurred in defending against the counterclaims.

In July 2001, convinced that its policy did not cover the counterclaims against Western American, National Union intervened in the action pursuant to 28 U.S.C. § 2201(a), seeking a declaration of no insurance coverage. Morrow and Montemayor answered and counterclaimed directly against National Union pursuant to the Louisiana Direct Action Statute, arguing that the policy did cover its counterclaims against Western American.

2

In March 2003, two days after the trial on the breach of contract claims commenced, Western American, Morrow, and Montemayor entered into a partial settlement ("the Settlement"). In the Settlement, the parties stipulated that: (1) "[a]ll allegations of theft and conversion . . . are not true"; and, (2) Western American "did not make the allegations of theft and conversion . . . knowing they were false; rather, these allegations were based on a misunderstanding . . . ." Western American entered into the Settlement without consulting National Union, despite the insurer's prior warning to Western American of its duty to cooperate with National Union before entering into any settlement agreement with Morrow and Montemayor. After National Union learned that Western American settled with Morrow and Montemayor, National Union formally objected to the Settlement.

National Union subsequently filed a motion for summary judgment, seeking a declaration of no coverage as to the defamation and wrongful sequestration claims Morrow and Montemayor had reserved against it. In December 2005, the district court agreed with National Union and dismissed all of Morrow's and Montemayor's claims.

Morrow and Montemayor did not dispute the district court's dismissal of their wrongful sequestration claim, but moved for reconsideration of their defamation claim, insisting that the district court erred in failing to give them the benefit of the presumption of malice that accompanies statements that are defamatory per se. In August 2006, the district court issued an amended order with the same result in which it held that the policy did not cover the defamation claim against National Union because (1) Western American's theft-and-conversion allegations were protected by the qualified privilege accorded statements made in the context of litigation, and (2) Western American's breach of the policy's cooperation clause eliminated National Union's coverage responsibility. Morrow and Montemayor timely appealed.

## II.  STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.  Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 259 (5th Cir. 2003).  A motion for summary judgment should be granted only when there is no genuine issue of material fact. Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).  In determining whether there is a genuine issue of material fact, we view all facts and draw all inferences in favor of the non-moving party. Id.

## III.  APPLICABLE LAW

"Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury." Costello v. Hardy, 864 So. 2d 129, 139 (La. 2004) (internal quotations omitted).  "The fault requirement is often set forth in the jurisprudence as malice, actual or implied." Id.  "Words which expressly or implicitly accuse another of criminal conduct . . . are considered defamatory per se." Id. at 140.

However, "even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows . . . that [the statement] was protected by a privilege, absolute or qualified." Id. at 141.  In Louisiana, a defamatory statement by an attorney in a judicial proceeding is protected by a qualified privilege, but "the statement must be material and must be made with probable cause and without malice." Freeman v. Cooper, 414 So. 2d 355, 359 (La. 1982).

## IV. DISCUSSION

The parties agree that Western American's theft-and-conversion allegations were defamatory per se and are accorded a presumption of malice.

Therefore, we must decide whether the allegations satisfy the requirements of the qualified privilege defense.

First, Western American's allegations satisfy the materiality element. Western American sued Morrow and Montemayor in December 1999 for breach of contract, alleging that Morrow and Montemayor had, inter alia, violated their agreement by improperly withholding business and accounts receivable and that their actions amounted to theft and conversion. The validity of Western American's breach of contract claim, along with the related theft-and-conversion allegations, formed the core issue in that suit. As Western American's theft-and-conversion allegations were central to its case, they were material to the proceeding.

Second, Western American's statements were made with probable cause and without malice. The district court's conclusion that Western American's allegations were "colorable" and thus made with probable cause and without malice is supported by the facts. The court found:

> [T]he allegations suggest that (1) Morrow & Montemayor had an agreement with Western American for exclusive representation; (2) business conducted pursuant to that agreement belonged to Western American; (3) Morrow and Montemayor had been collecting funds properly belonging to Western American . . . ;[] and (4) Morrow and Montemayor had not been transferring those funds to Western American. It is no stretch to state that a party which believes that its obligee has been "diverting all or part of accounts receivable" — were those facts proved to be true — arguably would be justified in asserting that its obligee was guilty of theft and conversion. Therefore, the allegations . . . rise to the level of a colorable claim for theft or conversion.

W. Am. Transp., LLC v. Morrow, No. 99-CV-2217, slip op. at 43 (W.D. La Aug. 15, 2006). Under Louisiana law, malice "for the purposes of the tort of defamation is a lack of reasonable belief in the truth of the statement giving rise to defamation." Costello, 864 So. 2d at 143. We agree with the district court that

Western American did not unreasonably disregard the truth when it accused Morrow and Montemayor of theft and conversion.

Morrow and Montemayor suggest that the presumption of malice accorded a statement that is defamatory per se prevents a defendant from proving a lack of malice when asserting a qualified privilege defense. However, a presumption of malice may be rebutted by the defendant. Huxen v. Villasenor, 798 So. 2d 209, 212 (La. App. 2001). Morrow and Montemayor also fail to acknowledge that the qualified privilege for statements made in the context of litigation is an affirmative defense which "will have the effect of defeating the defamation claim." Costello, 864 So. 2d at 142 n.13. We hold that the district court correctly found that the elements of qualified privilege were met and the defamation claim was defeated.

Because we hold that Western American's allegations of theft and conversion were protected by the qualified privilege for statements made in the context of litigation, we need not address whether Western American breached the National Union policy's cooperation clause.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED.