The NATIONAL BANK OF PAULDING,
Plaintiff,

v.

The FIDELITY and CASUALTY COM-
PANY, and Maryland Casualty
Company, Defendants.

Civ. No. 1576.

United States District Court
S. D. Ohio, W. D.

Dec. 31, 1954.

Headley, Sibbald & Taft, Cincinnati, Ohio, for plaintiff.

Harshman & Young, Dayton, Ohio, for defendant Fidelity & Casualty Co.

Landis, Ferguson, Bieser & Greer, Dayton, Ohio, for defendant Maryland Casualty Co.

CECIL, District Judge.

The plaintiff, The National Bank of Paulding, brought this action against defendants The Fidelity and Casualty Company of the State of New York and Maryland Casualty Company, a corporation of the State of Maryland, to recover from each of said defendants, the sum of $15,000, which it claimed to be due under a surety bond issued by each of the defendants to secure the plaintiff against certain losses.

Each of the defendants has filed an answer in which it admits certain facts alleged by the plaintiff in its complaint.

Both of the defendants deny any liability under clauses "B" and "E" of the bonds, and further claim that the loss sustained by the plaintiff was money loaned to its customer, M. G. Stoller, and therefore, was not covered by the bonds by virtue of Section 1(d) of the bonds. Another defense raised by the defendants is that the plaintiff failed to give written notice and proof of loss, as required by the bonds.

Photostatic copies of the bonds are attached to the complaint and are almost identical in content. The numerically numbered and lettered subdivisions that will be used in this Decision are identical in both bonds.

Each of the parties has filed a motion for summary judgment and the case is now before the Court upon these motions. The plaintiff's motion is supported by affidavits of M. G. Stoller, Walter K. Sibbald, O. E. White and the supplementary affidavit of O. E. White. There is attached to the original affidavit of O. E. White photographic copies of documents to which reference will be herein made. The defendants took the deposition of O. E. White, which deposition was filed and is also before the Court.

The Court is of the opinion that there are no disputed facts before the Court and that the pleadings, the affidavits and deposition contain all of the facts essential to decide the motions before the Court. The facts, briefly stated, are as follows:

Prior to March of 1951, M. G. Stoller had engaged in an extensive business of buying, selling and warehousing seeds and grain at Paulding, Ohio, under the trade-name of Stoller Seed House & Elevator. For ten years or more, prior to March, 1951, Mr. Stoller had been a customer of the plaintiff bank. His custom was to carry on and make transactions with the bank in the following manner:

He would deliver a shipment of grain or seed to the railroad company and get from the railroad company a uniform order bill of lading consigned to the order of Stoller Seed House at the destination of his customer, with directions to the carrier to notify the customer at destination. He would draw a sight draft on the purchaser, payable to the order of The National Bank of Paulding, attach this sight draft and an invoice to the customer to the uniform order bill of lading and present it to the bank. The bank would credit Mr. Stoller's account with the amount of the purchase order and send the draft and other papers to its correspondent bank in the city of destination. When the sight draft had been accepted and paid and the money returned to the plaintiff bank, it would charge Mr. Stoller's account with discount at a given rate.

On or about the 15th day of March, 1951, Mr. Stoller began a series of eight transactions with the plaintiff bank which extended through March 24, 1951 and which cost the bank an initial loss of $141,555. In each of these transactions which caused the loss, Mr. Stoller obtained a credit to his account by presenting to the bank an entirely fictitious set of papers. Without having made any delivery of grain to the railroad, he prepared a uniform order bill of lading which was not signed by the railroad company and with it, presented to the

bank an invoice and sight draft drawn upon an alleged customer with whom he had no pending transaction. The plaintiff claims that it is protected under paragraph (B) of the bonds which provides coverage as follows:

"Any loss of property through robbery, larceny (whether common law or statutory), burglary, theft, false pretenses, * * * whether effected * * * with or without negligence on the part of any of the employees * * * while such property * * * (is) lodged or deposited within an office or premises * * * (of the insured)."

The plaintiff claims further that it is also protected under Clause (E) of the bonds, which provides coverage as follows:

"Any loss sustained by the insured through having in good faith and in the course of business, * * * purchased or otherwise acquired, * * or given any value, extended any credit * * * on the faith of, * * * any securities, documents, or other written instruments which prove to have been counterfeited or forged as to the name of any * * issuer * * * or raised, or otherwise, altered, or lost, or stolen. * * * "

The defendants claim that they are not liable to the plaintiff under the paragraphs in question by reason of the exception from coverage of Section 1(d) of the bonds. Under the heading of "This Bond Does Not Cover" Section 1(d) provides:

"Any loss the result of the complete or partial non-payment of or default upon any loan made by or obtained from the insured, whether procured in good faith or through trick, artifice, fraud or false pretenses, except when covered by insuring Clause (A) or (D)".

The above quotation is from the bond of the defendant The Fidelity & Casualty Company of New York. The analogous provision in the bond of the defendant, Maryland Casualty Company, is the same except that it excepts (E) as well as (A) and (D).

Counsel for the plaintiff claim that the transactions prior to March 14, 1951, were sales by Stoller of commercial paper to the plaintiff bank. In support of this claim, Sections 1301.63 and 1305.27 of the Revised Code of Ohio are cited. It is a fact in this case that when the bank sent these drafts through for collection, it requested that they be returned without protest in the event of non-payment. By the sections of the Ohio statutes above cited, the plaintiff bank took the foreign bills without recourse. This would indicate a sale. The fact that the plaintiff bank gave Mr. Stoller credit when these instruments were deposited with the bank and charged his account with interest when the money was received by the bank, is some evidence of a loan. Whether or not the transactions prior to March 14, 1951, are classified as loans or purchases seems to the writer of this opinion to be of little consequence. The Court is primarily concerned with the nature of the eight transactions between March 14 and March 25, 1951. In the case of In re Grand Union Company, 2 Cir., 219 F. 353, a loan of money was defined. Syllabus 2 of that case reads as follows:

"A 'loan of money' is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equal to that borrowed. In order to constitute a loan, there must be a contract whereby in substance one party transfers to the other a sum of money which the other agrees to repay absolutely, together with such additional sums as may be agreed on for its use, and if such be the intent of the parties the transaction will be a loan, regardless of its form."

In order to have a loan, there must be an agreement, either expressed or implied, whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest, or without interest,

as the parties may agree. In order to have a contract, there must be a meeting of minds.

■ In the eight transactions here which caused the plaintiff's loss and for which it seeks to recover against the defendants upon their respective bonds, there was no meeting of minds of the parties. The plaintiff bank expected a return of its money in the same manner that it had received it in the previous transactions.

Mr. Stoller intended to get a credit to his account. He knew that the documents which he presented were fictitious in fact, that the plaintiff would rely upon them as genuine and that the plaintiff would not or could not get its money back from the alleged customers against whom the sight drafts were drawn. These are the elements of the transactions which constitute the false pretenses upon which the plaintiff bases its claims. There were no elements of loans in these transactions.

■ The plaintiff claims that its loss is covered by paragraph "B" of the bonds. In order for the plaintiff to recover under these provisions of the bonds, it would be necessary for it to establish that the loss was sustained through one or more of the methods of loss enumerated in that paragraph.

In considering this phase of the case, the Court is of the opinion that the items "false pretenses" and "larceny (whether common law or statutory)" are applicable. It is indicated above that the action of Mr. Stoller constituted the obtaining of money by false pretense.

Section 12447–1 of the General Code of Ohio, R.C. § 2907.21, defines larceny by trick as follows:

"Whoever obtains possession of, or title to, anything of value with the consent of the person from whom he obtained it, provided he induced such consent by a false or fraudulent representation, pretense, token, or writing is guilty of larceny by trick."

The Court is of the opinion that the method of operation by Mr. Stoller fell within the provisions of this statute.

A question arises as to whether or not the word "Property" embraces the loss which the bank sustained through these transactions. Mr. Stoller obtained a credit to his account in the plaintiff bank which he was able to check out in the form of money. Property is defined in these bonds to "mean money."

Counsel for the defendants raised the further question that whatever the act of Mr. Stoller was or amounted to, it was not committed on the premises of the plaintiff bank. Some of these questions were decided by the United States Court of Appeals for the Eighth Circuit in Hartford Accident & Indemnity Company v. Federal Deposit Insurance Corporation, 204 F.2d 933. In this case money credited to an individual through the deposit of checks which the depositor knew were not good, was held to be Property within the terms of a bond similar to the ones now before the Court. The deposit of checks and the subsequent withdrawal of money established as a credit by reason of the checks was held to have been committed on the premises of the bank.

It was further decided by the Court that the acts of the depositor amounted to obtaining money by false pretense. This Court is of the opinion that false pretenses are more clearly established in the case at bar than in the case cited above.

The Court reaches the conclusion that the plaintiff's loss is covered by Clause "B" of the bonds.

Counsel for the plaintiff claim that the defendants are liable to the plaintiff under paragraph "E" of the bonds on the theory of forgery.

The Court having arrived at the conclusion that the defendant bonding companies are liable under Clause "B" of the bonds, it is not necessary to consider further the question of whether or not the defendants are liable under paragraph "E" of the bonds.

■■ The rule for construing an insurance policy was set forth by Mr. Justice Sutherland in the case of Bergholm v. Peoria Life Insurance Co., 284

U.S. 489, 52 S.Ct. 230, 231, 76 L.Ed. 416, as follows:

"It is true that where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted. Mutual Life Ins. Co. [of New York] v. Hurni [Packing] Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235; Stipcich v. [Metropolitan Life] Insurance Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895. This canon of construction is both reasonable and just, since the words of the policy are chosen by the insurance company; but it furnishes no warrant for avoiding hard consequences by importing into a contract an ambiguity which otherwise would not exist, or, under the guise of construction, by forcing from plain words unusual and unnatural meanings.

"Contracts of insurance, like other contracts, must be construed according to the terms which the parties have used, to be taken and understood, in the absence of ambiguity, in their plain, ordinary, and popular sense. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462, 463, 14 S.Ct. 379, 38 L.Ed. 231."

The Court is of the opinion that the construction which it applies to the provisions of the bonds is reasonable and just, and it is arrived at without importing into the contracts any ambiguity which does not exist.

The defendants made a further defense that there was no notice of proof of loss, as required by the terms of the bonds. This defense seems to have been abandoned by counsel in their briefs. Whether it is or not, the Court considers that such defense is not tenable.

Counsel for the defendant, The Fidelity and Casualty Company of New York, in their brief submit a defense that the plaintiff bank failed to use prudence in connection with the transactions here involved. This defense was not pleaded in the defendant's answer.

In paragraph (B) of the bond of this defendant, it is provided that the loss covered by this paragraph may be "with or without negligence on the part of any of the Employees." Since the bond itself eliminates negligence of employees of the plaintiff, lack of prudence cannot be considered a defense.

Finally, the Court concludes that the defendants are liable to the plaintiff upon the bonds in question and that the motion of the plaintiff for summary judgment should be sustained.

The motions of the defendants for summary judgment will be overruled.

Judgment will be awarded to the plaintiff against each of the defendants in the sum of $15,000 with interest from the 18th day of June, 1951.

An order may be drawn accordingly.