SHOALS NATIONAL BANK OF FLOR-
ENCE, a National Banking Corp.,
Plaintiff,

v.

The HOME INDEMNITY COMPANY,
a Corp., Defendant.

Civ. A. No. 73-G-613-NW.

United States District Court,
N. D. Alabama,
Northwestern Division.

April 19, 1974.

Jesse A. Keller, Keller & Hill, Flor-
ence, Ala., for plaintiff.

James E. Clark, London, Yancey,
Clark & Allen, Birmingham, Ala., for
defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GUIN, District Judge.

This suit is brought by the plaintiff, Shoals National Bank of Florence, a national banking corporation, pursuant to a banker's blanket bond issued by the defendant, Home Indemnity Company. Diversity jurisdiction exists under 28 U.S.C. § 1332 by reason of the amounts in controversy and the admitted diversity of citizenship. Personal jurisdiction and venue are not contested.

### Findings of Fact

The facts in the case are undisputed.

1. On February 16, 1972, one Jessie Robertson opened an account with the plaintiff, Shoals National Bank, in the name of an unincorporated entity, "Robertson's Auto Sales."

2. Robertson deposited with the plaintiff on February 16, 1972, certain negotiable sight drafts totaling $13,010.00 and a check in the sum of $1,100.00.

3. The aforesaid envelope drafts stated on their faces that they were "void unless document(s) listed below are enclosed herein at the time the drawer deposits this check for payment." Beneath this language were the words "Title for Vehicle." These words were followed by a description of a particular vehicle and that vehicle's purported motor serial number. Enclosed in each of these envelope drafts was a document entitled "Car Invoice" which described the respective automobile noted on the face of the draft.

4. The aforesaid check was made payable to Robertson Auto Sales and contained in large red print at the top thereof the words "ATTACH TITLE." Attached to the check was a document entitled "Car Invoice."

5. On February 22, 1972, Jessie Robertson made a second deposit with the plaintiff, Shoals National Bank. The total amount of this deposit was $3,530.00. Among the items deposited on this date was a negotiable sight envelope draft dated February 17, 1972, in the amount of $1,580.00. The envelope draft deposited on February 22, 1972, was identical in form to those drafts deposited on February 16, 1972.

6. Subsequently, on February 22, 1972, Robertson requested that the bank issue certain cashier's checks against the account of Robertson Auto Sales. The total amount of the requested checks was $16,800.00.

7. A teller of Shoals National Bank determined from the bookkeeping department that there was a balance in the "Robertson's Auto Sales" account that equaled or exceeded the requested checks. Therefore, the requested checks were prepared and signed by officers or agents of the plaintiff bank and issued to Jessie Robertson.

8. At the time of Robertson's deposits in Shoals National Bank on February 16, 1972, and February 22, 1972, Robertson did not, in fact, have title to the automobiles described on the faces of the aforesaid envelope drafts and also described in the documents entitled "Car Invoice" which were enclosed in the envelope drafts.

9. Moreover, Robertson did not have title to the automobile described on the document entitled "Car Invoice" which was attached to the deposited check of February 16, 1972.

10. Thereafter, on or about February 26, 1972, a number of the instruments were returned by the payee banks to Shoals National Bank with instructions to the effect that the documents entitled "Car Invoice," which were enclosed with the instruments, had to be notarized. Within three or four days after February 26, 1972, the remaining instruments were also returned with the same or similar instructions. Upon receipt of this information, the instruments were notarized and again sent through for collection.

11. Again the instruments were refused and returned to Shoals National Bank because the purported bills of sale enclosed with the instruments were ficti-

tious, and because Robertson did not have title to the respective automobiles.

12. Robertson, as of the date of trial, had not produced any other title documents and none of the instruments had been collected.

13. Prior to the occurrence of the above described events, the defendant, The Home Indemnity Company, had issued to the plaintiff bank for valuable consideration its "banker's blanket bond." The same was in full force and effect at the time of the occurrence of these transactions.

14. Plaintiff bank made demand on the defendant insurance company pursuant to its "banker's blanket bond," in the amount of $15,800.00, the amount of the loss less $1,000.00 deductible as provided for in the bond. Plaintiff contends that the actions of Robertson, as set out above, constituted an actual fraud and false pretense as enunciated under the terms of the bond.

15. Defendant denied the claim and contended that plaintiff's loss was not covered under the insuring agreement of the bond and that the coverage was excluded pursuant to the specific exclusions enumerated in the bond.

### Conclusions of Law

Paragraph B of the "Insuring Agreement" in question covers loss of property on the premises of the insured, occurring with or without negligence or violence, through "false pretenses." The initial question, therefore, for the court's consideration is whether or not Jessie Robertson's actions in falsifying the bills of sale, enclosing the bills of sale in deposit envelopes and then establishing an account with plaintiff bank based on those fraudulent and fictitious bills of sale, constitute false pretenses within the purview of the insuring agreement.

■ The "Insuring Agreement" (i. e., banker's blanket bond) in the instant case does not specifically define "false pretenses." This phrase, however, has been the subject of many and varied judicial interpretations when presented to the courts in connection with a so-called "banker's blanket bond." A thorough search and examination of those interpretations, however, has revealed no case directly in point with the facts and circumstances of the instant case. Consequently, this court considers this case to be one of first impression on the facts presented. Inasmuch as the case is a diversity case, the court will look to the appropriate Alabama law for guidance.

■ As a general rule, the "banker's blanket bond" has been given a broad and liberal construction. *See generally* Couch on Insurance 2d § 15.76 (1959). Moreover, when the undefined language within such bonds has been subject to judicial interpretations, the courts have uniformly held that this language is to be given a broad meaning and construed most strongly against the surety company. *See* Citizens State Bank v. Transamerica Ins. Co., 452 F.2d 199 (7th Cir. 1971); Fed. Deposit Ins. Corp. v. Aetna Casualty and Surety Co., 426 F.2d 729 (5th Cir. 1970); Brandon v. Holman, 41 F.2d 586 (4th Cir. 1930); Citizens Trust & Guaranty Co. of W. Va. v. Globe & Rutgers Fire Ins. Co., 229 F. 326, 330 (4th Cir. 1915).

In National Bank of Commerce v. Fidelity and Casualty Co., 312 F.Supp. 71, 75 (E.D.La.), aff'd, 437 F.2d 96 (5th Cir. 1970), the court was confronted with defining "false pretenses" as used in a "banker's blanket bond" similar to the one in the present case. There, as in the present case, the policy provisions provided no construction or definition of the words "false pretenses." The Fifth Circuit concluded that the term "false pretenses" was at least as broad as the commonly used criminal definition of the term. 312 F.Supp. at 75, *citing* United States v. Western Contracting Corp., 341 F.2d 383 (8th Cir. 1965). Moreover, the loss sustained by the bank when a depositor presented a check representing that it was drawn against an account with sufficient funds, when in fact the depositor knew the account did not have sufficient funds, was found to

have resulted from a "false pretense" as described within the banker's blanket bond. 312 F.Supp. at 74.

In Alabama the offense of false pretense has been held to consist of (1) the pretense, (2) its falsity, (3) obtaining property by reason of the pretense, (4) knowledge on the part of the accused of the falsity of the pretense, and (5) an intent to defraud. Taylor v. State, 46 Ala.App. 105, 109, 238 So.2d 902, 907 (1970); Holloway v. State, 37 Ala.App. 96, 64 So.2d 115 (1952). Likewise, in Young v. State, 155 Ala. 145, 46 So. 580, 581 (1908), the court defined "false pretense" as a "fraudulent representation of an existing or past fact, by one who knows it not to be true, as is adapted to induce the person to whom it is made to part with something of value."

In the case of Eaton v. State, 16 Ala. App. 405, 78 So. 321 (1918), the Alabama Court of Appeals was construing the criminal offense of "false pretenses." In circumstances similar to those in the present case, the court held that the giving of a check by an individual was itself a representation that there existed sufficient money in the bank on which the check was drawn and, furthermore, if the check was given with the intent to deceive one into parting with property, or title thereto, the individual was guilty of obtaining money by false pretenses.

The court is of the opinion that in the instant case the meaning of the term "false pretenses" as used in the "banker's blanket bond" is at least as broad as the criminal definition given the term. Moreover, in light of the law as expressed by the Alabama courts, it seems clear to the court that under the facts and circumstances of the instant case Robertson's actions constituted a "false pretense" which resulted in plaintiff's loss.

Here, Robertson falsified the required bills of sale and, based on these bills of sale, established an account with the plaintiff. At the time he made deposits in this account, Robertson knew that the required bills of sale were false. The

bank, in reliance on these fraudulent bills of sale, credited Robertson's account for the amount of the deposited instruments secured by the bills of sale. Subsequently, the bank, upon request and in reliance on the drafts, issued to Robertson certain cashier's checks against the account. Under these circumstances the court is of the opinion that Robertson's actions constitute a "false pretense" within the meaning of the "Insuring Agreement." See National Bank of Commerce v. Fidelity and Casualty Co., 312 F.Supp. 71 (E.D.La.), aff'd, 437 F.2d 96 (5th Cir. 1970); United Pacific Insurance Co. v. Idaho First National Bank, 378 F.2d 62 (9th Cir. 1967); Indemnity Insurance Co. of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8th Cir. 1965); United States v. Western Contracting Corp., 341 F.2d 383 (8th Cir. 1965); Hartford Accident and Indemnity Co. v. Federal Deposit Ins. Corp., 204 F.2d 933 (8th Cir. 1953).

Having decided that the loss in the instant case is covered by the "false pretense" section of the "Insuring Agreement," it becomes unnecessary to consider the plaintiff's further contention that the loss is covered under the "counterfeited" provision of the policy.

█ However, the defendant contends that even if Robertson's conduct did amount to false pretenses within the meaning of the "banker's blanket bond," the loss here sued for arises out of a loan, or transaction in the nature of a loan, obtained from the insured under the bonds sued upon, and is therefore excluded from coverage by section 2(e).

Section 2(e) of the subject policy under the section entitled *"Exclusions"* contains the following language:

Section 2. THIS BOND DOES NOT COVER:

\* \* \* \*

(e) loss resulting from complete or partial non-payment of, or default upon,

(1) any loan or transaction in the nature of, or amounting to, a loan

made by or obtained from the Insured, or

(2) any note, account, agreement or other evidence of debt assigned or sold to, or discounted or otherwise acquired by, the Insured whether procured in good faith or through trick, artifice, fraud, or false pretenses unless such loss is covered under Insuring Agreement (A), (D) or (E); or loss resulting from payments made or withdrawals from any depositor's account by reason of uncollected items of deposit having been credited by the Insured to such account, *unless* [emphasis added] such payments are made to, or withdrawn by such depositor or representative of such depositor who is within the office of the Insured at the time of such payment or withdrawal . . . .

In order for the loss to fall within the exclusion, the loss occasioned by the depositor's false pretenses must arise out of a loan, or a transaction in the nature of a loan, as described within the exclusion clause.

It is the court's considered opinion that Shoals National Bank's issuance of the requested cashier checks to its depositor, Robertson, was not a loan or a transaction in the nature of a loan as described within the provisions of the exclusion clause. As stated in National Bank of Commerce v. Fidelity and Casualty Co., 312 F.Supp. 71 (E.D.La.), aff'd, 437 F.2d 96 (1971):

The policy exclusion contemplates a lending transaction *knowingly entered into by the bank in reliance on the customer's express agreement to repay,* most often for the purpose of making a profit on the interest.

312 F.Supp. at 75 (emphasis added).

Moreover, this court is in agreement with the court in In re Grand Union Company, 219 F. 353, 356 (2nd Cir. 1915), wherein a loan of money was defined as follows:

A "loan of money" is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equal to that borrowed. In order to constitute a loan, there must be a contract whereby in substance one party transfers to the other a sum of money which the other agrees to repay absolutely, together with additional sums as may be agreed on for its use . . . .

In the instant case, Robertson and the plaintiff had not entered into any contract, express or implied. When the bank issued the checks in question, it did not contemplate or expect a repayment of the money withdrawn. Moreover, it can hardly be argued that Robertson intended to repay the money withdrawn. In fact, Robertson intended anything but repayment of the money he had obtained under the "false pretense." The simple fact is that the bank issued the requested checks to Robertson solely in reliance on Robertson's deposits to the bank. In belief that the balance shown on Robertson's account was accurate, the bank issued the checks. Under these circumstances, the court is of the opinion that the transaction did not constitute a loan or a transaction in the nature of a loan as contemplated by the exclusion clause.

In National Bank of Paulding v. Fidelity & Casualty Co., 131 F.Supp. 121 (S.D. Ohio 1954), the bank had suffered losses in its reliance on fictitious documents. The court, in rejecting the argument that the loss to the bank was the result of a loan and thereby excluded by the exclusion clause, emphasized the fact that a loan is a consensual contract "whereby one person advances money to the other and the other agrees to repay it upon such terms as to time and rate of interest." The court further noted that "in order to have a contract [of this type], there must be a meeting of the minds." 131 F.Supp. at 123–124 (S. D. Ohio 1954).

The bank in First National Bank of Decatur v. Insurance Company of North

**54**

America, 424 F.2d 312 (7th Cir. 1970), had suffered losses by honoring checks drawn against uncollected deposits. The Seventh Circuit, in denying the contention that the transaction constituted loans which were specifically excluded from the coverage of the banker's blanket bond, stated:

> It is unlikely . . . that Decatur intended to make open-ended, unsecured loans to Community by allowing it credit against deposits that were not only uncollected but not even covered by funds in the drawee bank. A loan implies an agreement, a meeting of the minds. Mildly stated, it does not comport with the usual understanding to say that every time one person wrongfully obtains property from another and thus becomes legally obligated to restore it, he has succeeded in obtaining a loan from his victim.

424 F.2d at 316 (7th Cir. 1970).

"It is not conceivable to us that any disinterested banker, insurance underwriter, or lawyer would construe the word 'loan', as used in the exclusion clause . . . to cover the obligation imposed by law to reimburse a bank for money or credit obtained through the use of worthless checks." Hartford Acc. & Indem. Co. v. Federal Deposit Ins. Corp., 204 F.2d 933, 937 (8th Cir. 1953).

It seems inconceivable to this court that the bank's actions in the present case would be construed as a loan or a transaction in the nature of a loan. To hold that the bank has made a loan every time its money is wrongfully obtained or converted would destroy the very purpose for which the "Insuring Agreement" was issued.

The defendant, however, has pointed out the fact that the "banker's blanket bond" was specifically revised in April, 1969, to exclude the so-called "check kiting" schemes. In the instant case, plaintiff's loss did not result from any "check kiting" scheme as the term is commonly used and understood in the commercial world. Plaintiff's loss resulted from Robertson's attachment of fictitious bills of sale to certain negotiable sight drafts. It suffices to say that the revised banker's blanket bond exclusion specifically excluding check kiting is not applicable to the facts presented by the present case. However, even if the transactions in the instant case did in fact constitute a loan or a transaction in the nature of a loan, the court is of the opinion that the specific language of the exclusion clause in question excludes the facts and circumstances of the present case.

■ "Contracts of insurance, like other contracts, [must] be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood, [in the absence of ambiguity] in their plain ordinary and popular sense." Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462–463, 14 S.Ct. 379, 381, 38 L.Ed.2d 231 (1893). However, "where the terms of a policy are of doubtful meaning, that construction most favorable to the insured will be adopted." Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L. Ed. 235 (1923). More importantly, the fact that the form of the banker's blanket bond may have resulted from the "joint efforts and negotiations" of the American Bankers Association and the Surety Association of America will not deprive the plaintiff bank from the benefit of the usual rule construing ambiguities in an insurance policy against the insurer. First National Bank of Decatur v. Insurance Company of North America, 424 F.2d 312, 317 (7th Cir. 1970). This record is absent any evidence that this plaintiff or any association acting for it negotiated the language of the bankers' blanket bond herein question.

■ In the instant case, the exclusion clause of section 2(e) is one sentence. The clause contains two subsections which each contain specific exclusions. Exclusion section 2(e)(2) contains the following language:

> (2) any note, account, agreement or other evidence of debt assigned

or sold to, or discounted or otherwise acquired by, the Insured whether procured in good faith or through trick, artifice, fraud, or false pretenses . . .; or loss resulting from payments made or withdrawals from any depositor's account by reason of uncollected items of deposit having been credited by the Insured to such account, *unless* such payments are made to, or withdrawn by, such depositor or representative of such depositor *who is within the office of the Insured at the time of such payment or withdrawal,* or unless such loss is covered under Insuring Agreement (A). (Emphasis added.)

As can be seen from the plain and ordinary language of the clause, subsection (2) of section 2(e) specifies two distinct and separate exclusions separated by a semicolon. The second exclusion within subsection (2), which begins "loss resulting from payments made or withdrawals from," specifies a particular exclusion which the defendant argues would be in the nature of a loan. However, if the events or circumstances of the present case are in fact as the defendant contends, i.e., a loan or a transaction in the nature of a loan and therefore excluded from coverage by said provision, the clause goes on to specifically state that if the events covered by this language take place *in the office of the insured,* there is no exclusion. Another way to say the same thing is to say the clause following the semicolon provides for an exception to the exclusionary provision under the *exact facts* which have been stipulated in this case.

In the present case, the insured plaintiff's loss resulted from the withdrawal of funds from the depositor Robertson's account after deposits made by Robertson had been credited to his account but had not been, on the date of withdrawal, collected. Further, the issuance of the cashier's check to Robertson occurred within the bank's office. In the court's opinion, the facts in the instant case seem to be the exact situation the draftsmen had in mind when subsection (2) of the exclusion clause of section 2(e) was drafted. The draftsmen seemingly desired to protect the insurer from so-called check kiting schemes, while at the same time providing protection for the defrauded insured in such situations as that before the court.

Consequently, the court is of the opinion that the specific language of the second half of subsection (2) controls the facts and circumstances in the instant case. Inasmuch as the court considers the specific exception to the exclusion of subsection (2) to be controlling, this would, in the further opinion of the court, exclude any contention that the present circumstances are included within the language of subsection (1) of section 2(e); that is, within the purview of the words "a loan or transaction in the nature of a loan." The specific controls the general.

As such, in the present case, the court considers the facts and circumstances to fall within the purview of the exception to the exclusion inasmuch as the payment to and withdrawal of the funds occurred within the bank. Consequently, the court holds that the insured's loss is recoverable pursuant to the terms of the policy.

Accordingly, judgment is hereby entered in favor of the plaintiff, Shoals National Bank, and against the defendant, in the total amount of $16,592.36; being the total stipulated loss to the plaintiff, Shoals National Bank, of $15,690.00, less the stated deductible of $1,000.00, and plus interest at the rate of six per cent (6%) from February 22, 1972.