IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 21, 2007

Charles R. Fulbruge III
Clerk

No. 07-10142

CITIBANK TEXAS, N.A.

Plaintiff - Appellee

v.

PROGRESSIVE CASUALTY INSURANCE CO.

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before WIENER, DEMOSS, and PRADO, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellee Citibank Texas, N.A. ("Citibank") sued Defendant-Appellant Progressive Casualty Insurance Co. ("Progressive") as the issuer of a fidelity bond, claiming Progressive should cover a loss Citibank sustained in a prior state court action filed against it by a depositor on a claim of unauthorized endorsement. Both Citibank and Progressive filed motions for summary judgment. The district court agreed with Citibank on its breach of contract claim and held Progressive liable for Citibank's loss. As we agree with the district court that Progressive is bound by the state court's determination of Citibank's liability to its depositor for the amount of the post-judgment settlement reached between the bank and its depositor, we affirm.

## I.  FACTS AND PROCEEDINGS

GoldenLife/Richardson L.P. ("GoldenLife") was a Texas limited partnership formed by Todd P. Lindley to develop and operate a skilled nursing facility in Richardson, Texas.  Lindley was also the president and owner of Pilatus Company, GoldenLife's general partner.  The limited partners of GoldenLife invested $2,570,000 in the partnership.  Between February and September of 2002, Citibank allowed Lindley, an authorized signatory on GoldenLife's account as well as on another Citibank account in the name of Lindley Properties, to deposit into his personal Lindley Properties account sixteen checks payable to GoldenLife totaling $1,700,000.  Lindley used these GoldenLife funds in an unauthorized manner, inconsistent with the intent of the GoldenLife partnership.[1]

In 2005, after GoldenLife discovered Lindley's misuse of the funds, it accused Citibank of conversion for allowing Lindley to misdeposit the sixteen checks into his own account and filed a suit for damages against Citibank in Texas state court.  Progressive was Citibank's insurer under a Financial Institution Bond (the "Bond") that provided up to $7,000,000 in coverage for losses resulting from counterfeiting, forgeries, unauthorized signatures, and other dishonest or fraudulent acts.  Under the Bond, Progressive had the right (but not the obligation) to join in Citibank's defense, but, at its election, declined to do so.  The state court bifurcated the trial, first addressing liability and eventually entering partial summary judgment in favor of GoldenLife on the issue of liability.  The court reasoned that, as Citibank had accepted and paid checks belonging to GoldenLife with Lindley's unauthorized endorsements, Citibank had taken the checks with notice of Lindley's breach of fiduciary duty and thus was not a holder in due course.  The court held Citibank responsible for

---

[1] GoldenLife's claims against Lindley are not before the court.

misdepositing GoldenLife's checks. Subsequent to this liability determination, and prior to the court's determination of the amount of GoldenLife's loss, Citibank and GoldenLife settled their dispute for $845,000, roughly fifty cents on the dollar.

Citibank then sought reimbursement of its $845,000 settlement payment to GoldenLife from Progressive. Insuring Agreement D of the Bond indemnified Citibank for "[l]oss resulting directly from . . . [f]orgery or alteration of, on or in any Negotiable Instrument . . . ." Under the Bond's Unauthorized Signature Rider (the "Rider"), Insuring Agreement D was modified as follows: "Accepting, paying or cashing any Negotiable Instruments or Withdrawal Orders that bear unauthorized signatures or endorsements shall be deemed to be a Forgery under this Insuring Agreement."[2] As the state court had held that Lindley's endorsements of the GoldenLife checks were unauthorized, Citibank contended that these checks were forgeries for purposes of Insuring Agreement D, as modified by the Rider, making Citibank's underlying state court loss to its depositor recoverable under the Bond.

When Progressive refused payment, Citibank sued in federal court for breach of contract and breach of the duty of good faith and fair dealing in violation of the Texas Insurance Code. Citibank sought to recover (1) the amount of its settlement less the Bond's deductible, (2) attorneys' fees incurred in defending the GoldenLife case in state court, and (3) damages for its breach of the duty of good faith and fair dealing claim. Progressive took the position that the Bond did not cover any part of the sum for which Citibank had been held liable to GoldenLife in state court.

The district court held for Citibank on its breach of contract claim but denied recovery on its claims for (1) attorneys' fees incurred in defending the

---

[2] Emphasis added.

GoldenLife case in state court and (2) bad faith violations of the Texas Insurance Code. The court stated two alternative bases for its holding that Citibank's settlement payment was a loss covered by the Bond. First, the court invoked the doctrine of collateral estoppel in rejecting Progressive's contention that it was not bound by the state court judgment and could contest the Bond's coverage of Citibank's loss by relitigating the issue of Citibank's liability to GoldenLife for honoring unauthorized endorsements. The court ruled, in the alternative, that even if Progressive were not collaterally estopped from relitigating whether Lindley's endorsements were unauthorized, the district court would hold, as had the state court on the merits, that Lindley's endorsements were unauthorized under the Bond. The district court held Progressive liable for (1) the settlement amount less the Bond's deductible, (2) pre-judgment and post-judgment interest, and (3) attorneys' fees for the federal court dispute between Progressive and Citibank, awarding Citibank approximately $813,000.[3] Progressive timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.[4] A motion for summary judgment should be granted only when there is no genuine issue of material fact.[5] In determining whether there is a genuine issue of material fact, we view all facts and draw all inferences therefrom in favor of the non-moving party.[6]

---

[3] The district court awarded Citibank: (1) $695,000 (the $845,000 Citibank paid to GoldenLife less the Bond's $150,000 deductible); (2) $38,541 pre-judgment interest; and (3) $79,592 in attorneys' fees for prosecuting its claim on the Bond against Progressive, for a total judgment of $813,133 (plus post-judgment interest at the rate of 4.99% per annum).

[4] Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

[5] Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[6] Id.

## III.  ANALYSIS

Citibank does not remain obligated to prove its claim as if the underlying state judgment never happened.  The Bond explicitly provided that Progressive would reimburse Citibank for checks it accepted with unauthorized endorsements, and the state court held that Lindley's endorsements of the GoldenLife checks were unauthorized.  The issue on which this case turns — Citibank's liability to its depositor for wrongfully honoring unauthorized endorsements —  has already been resolved by a final and executory judgment.  It matters not that Progressive refused to exercise its option under the Bond to participate in Citibank's defense.  Either way, Progressive is precluded from attacking the state court's liability determination (or, for that matter, the quantum of the settlement between Citibank and GoldenLife, which Progressive has not challenged).

The district court ruled that Progressive is collaterally estopped from attacking the state court determination, noting that the Bond explicitly gave Progressive the right to conduct or support Citibank's state court defense but that it chose not to do so.  Progressive had notice of the GoldenLife suit yet declined to participate.  The district court followed well-established precedent: An insurer that has the right or duty to defend a suit against an insured but fails to do so is generally bound by the judgment in that suit.  In Minter v. Great American Insurance Co. of New York, for example, we held that, because an insurer "had constructive notice of the underlying action against [the insured], as well as the right to defend, it is precluded from collaterally attacking the state court judgment."[7]  We reached a similar conclusion in Ridgway v. Gulf Life Insurance Co.,[8] noting that it made no difference whether an insurer had the

---

[7] 423 F.3d 460, 473 (5th Cir. 2005).

[8] 578 F.2d 1026, 1029 (5th Cir. 1978) (per curiam) ("The principle is well-established that if a liability insurer with notice of a suit and duty to defend it fails to do so, it is bound by

duty to defend or the right to defend; it is sufficient that the insurer had "the right to defend and had adequate notice of a claim under the terms of this policy."[9]

Progressive nevertheless contends that Citibank must again prove that Lindley's endorsements were unauthorized, this time within the intendment of the relevant provision of the Bond, arguing that General Agreement F of the Bond precludes the state court's decision from having collateral estoppel effect. General Agreement F states that if "the Underwriter elects not to defend any causes of action, neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this Bond for loss sustained by the Insured . . . ."[10] Progressive interprets this language to mean that if it had elected to defend Progressive in state court, the state court judgment would be a covered loss; but because it did not exercise its right to defend Citibank against GoldenLife's claim, Citibank "remains obligated to prove its claim under the Bond as if the judgment or settlement never happened." We agree with the district court that Progressive's interpretation of this language is off the mark. General Agreement F prevents a judgment against the insured from determining coverage, even if the insurer elects not to defend a cause of action. That provision does not apply to liability, however. There is no dispute about whether depositing checks with unauthorized endorsements is a covered event under the Bond. General Agreement F does not shield Progressive from the state court's determination that Lindley's endorsements were unauthorized, making Citibank liable to its depositor for the loss resulting from the honoring of wrongful endorsements.

---

the judgment in that suit.").

[9] Id.

[10] Emphasis added.

Besides the fact that Progressive incorrectly interprets the meaning of General Agreement F, its reading is neither equitable nor sound from the perspective of judicial economy. Progressive's interpretation would give it a second bite at the proverbial apple to relitigate an insured's liability on the merits every time it refused to participate in the underlying lawsuit. To mix metaphors, Progressive would then have a stereotypical "heads I win, tails you lose" option, and thus would never have an incentive to join in the defense of an insured because, after abstaining from the initial proceeding, it would still have a second chance to contest coverage should the insured fail to prevail.

Progressive also contends that it should not be collaterally estopped from contesting the Bond's coverage of Citibank's loss. This, urges Progressive, is because the Bond's express definition of unauthorized endorsement governs coverage, and its definition differs from the definition used by the state court in holding that the endorsements were not authorized. According to Progressive, then, Citibank's loss resulting from Lindley's endorsements has not yet been litigated under the Bond's definition of an unauthorized endorsement for purposes of coverage. Progressive argues that the Bond's definition was not before the state court, which applied the definition of unauthorized endorsement found in the Uniform Commercial Code ("UCC") (as codified in the Texas Business & Commerce Code), viz., that an endorsement is unauthorized any time it is made "without actual, implied, or apparent authority."[11] In contrast, the Bond Rider defines an unauthorized endorsement as an "endorsement not reflected on the appropriate signature card or named in the Insured's records for the account or accounts in question."

Although there might be some hypothetical example "out there" in which an endorsement would be unauthorized under one definition but not under the

---

[11] Tex. Bus. & Comm. Code § 1.201(b)(41).

other, we need not reach the abstract question whether the substance of the two definitions is the same. When Progressive opted not to join in the defense of Citibank in state court, it intentionally declined — and thereby forfeited — any opportunity to raise this distinction. Failure to exercise its option to intervene and urge the state court to apply the Bond's definition of unauthorized endorsement collaterally estops Progressive from contesting the definition applied by the state court in determining that Lindley's endorsements were unauthorized, whether as to liability or as to coverage.[12]

On appeal, Progressive did not address the related but distinct question whether it should be estopped from contesting the $845,000 settlement amount agreed on by GoldenLife and Citibank after the judgment of liability was rendered but before any determination of the quantum of GoldenLife's loss. Progressive has thus waived any right it might have had to contest the quantum of the GoldenLife/Citibank settlement,[13] and is therefore bound by both the state court's liability determination and the settlement amount reached by Citibank and GoldenLife (which, as noted, is substantially less than the liquidated amount of the loss incurred).

## IV. CONCLUSION

---

[12] The district court alternatively held that there was no legal distinction between the UCC's and Bond's definitions of unauthorized endorsement as applied to the facts of this case. As we affirm the district court's holding grounded in collateral estoppel, we need not address this alternative part of the court's holding. If, however, we were to assume, arguendo, that Progressive was not collaterally estopped from relitigating whether Lindley's endorsements were unauthorized for purposes of coverage, we would agree with the district court. Under the instant facts, we perceive no distinction between the UCC's and Bond's definitions: Lindley's endorsements were unauthorized under both standards. As president of GoldenLife's corporate general partner, Lindley's name did appear on the signature card for the GoldenLife account, but he was not authorized to endorse GoldenLife checks for deposit into his personal account or any account other than GoldenLife's. Lindley endorsed fifteen of the sixteen checks with the account number for Lindley Properties, and one check with no account number at all. We would agree with the district court that, as none of his endorsements included the GoldenLife account number, Lindley's endorsements were unauthorized under both definitions.

[13] See Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005).

As Progressive declined to exercise its option under the Bond to participate in Citibank's state lawsuit, it is collaterally estopped from relitigating the state court's determination of unauthorized endorsement. General Agreement F of the Bond does not obligate Citibank to prove that Lindley's endorsements were unauthorized independent of the state court judgment; neither does the state court's use of the UCC's definition of unauthorized endorsement give Progressive a second chance to advocate its policy definition after refusing to enter the fray under its option to join the defense. The state court answered the question whether Lindley's endorsements of the sixteen GoldenLife checks were unauthorized after Progressive opted not to intervene in Citibank's defense. Progressive is therefore collaterally estopped from relitigating this issue. As the district court held, Progressive is responsible for reimbursing Citibank for its $845,000 settlement with GoldenLife (less the Bond's deductible) and for its attorneys' fees in this action, as well as for pre-judgment and post-judgment interest.

AFFIRMED.