REVISED APRIL 15, 2008
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 31, 2008

Charles R. Fulbruge III
Clerk

No. 07-10142

CITIBANK TEXAS, N.A.

Plaintiff - Appellee

v.

PROGRESSIVE CASUALTY INSURANCE CO.

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:06-CV-00395

Before WIENER, DEMOSS, and PRADO, Circuit Judges.
WIENER, Circuit Judge:[1]

Plaintiff-Appellee Citibank Texas, N.A. ("Citibank") sued Defendant-Appellant Progressive Casualty Insurance Co. ("Progressive") as the issuer of a Financial Institution Bond (the "Bond"), claiming Progressive should cover a loss Citibank sustained in a prior state court action filed against it by a depositor on a claim of unauthorized endorsement. Both Citibank and Progressive filed motions for summary judgment. The district court agreed with Citibank on its

---

[1] This opinion replaces the opinion reported at 508 F.3d 779 (5th Cir. 2007), which was previously withdrawn on panel rehearing.

breach of contract claim and held Progressive liable for Citibank's loss. As we now disagree with the district court's holdings that (1) Progressive is collaterally estopped from contesting the state court's determination and (2) the endorsements were "unauthorized" within the intendment of the Bond, we reverse the district court and render a take-nothing judgment against Citibank.

## I. FACTS AND PROCEEDINGS

GoldenLife/Richardson L.P. ("GoldenLife") was a Texas limited partnership formed by Todd P. Lindley to develop and operate a skilled nursing facility in Richardson, Texas. Lindley was also the president and owner of Pilatus Company, GoldenLife's general partner. The limited partners of GoldenLife invested $2,570,000 in the partnership. Between February and September of 2002, Citibank allowed Lindley, an authorized signatory on GoldenLife's account as well as on another Citibank account in the name of Lindley Properties, to endorse and deposit into his personal Lindley Properties account sixteen checks payable to GoldenLife totaling $1,170,000. Lindley used these GoldenLife funds in an unauthorized manner, inconsistent with the intent of the GoldenLife partnership.[2]

In 2005, after GoldenLife discovered Lindley's misuse of the funds, it accused Citibank of conversion for allowing Lindley to misdeposit the sixteen checks into his own account and filed a suit for damages against Citibank in Texas state court. Progressive was Citibank's insurer under the Bond, which provided up to $7,000,000 in coverage for losses resulting from counterfeiting, forgeries, "unauthorized" signatures, and other dishonest or fraudulent acts. Under the Bond, Progressive had the right (but not the obligation) to join in Citibank's defense of the state court action but, at its election, declined to do so. The state court bifurcated the trial, first addressing liability and eventually

---

[2] GoldenLife's claims against Lindley are not before the court.

entering partial summary judgment in favor of GoldenLife on that facet of the claim. The court reasoned that, as Citibank had accepted and paid checks belonging to GoldenLife with Lindley's unauthorized endorsements, Citibank had taken the checks with notice of Lindley's breach of fiduciary duty and thus was not a holder in due course. The state court held Citibank responsible for misdepositing GoldenLife's checks. Subsequent to this liability determination, and prior to the court's determination of the amount of GoldenLife's loss, Citibank and GoldenLife settled their dispute for $845,000.

Citibank then sought reimbursement from Progressive for the $845,000 settlement payment. Insuring Agreement D of the Bond indemnified Citibank for "[l]oss resulting directly from . . . [f]orgery or alteration of, on or in any Negotiable Instrument . . . ." Under the Bond's Unauthorized Signature Rider (the "Rider"), Insuring Agreement D was modified as follows: "Accepting, paying or cashing any Negotiable Instruments or Withdrawal Orders that bear unauthorized signatures or endorsements shall be deemed to be a Forgery under this Insuring Agreement."[3] As the state court had held that Lindley's endorsements of the GoldenLife checks were unauthorized, Citibank contended that these checks were "unauthorized endorsements," and thus forgeries for purposes of Insuring Agreement D, as modified by the Rider, making Citibank's underlying state court loss to its depositor recoverable under the Bond.

When Progressive refused payment, Citibank sued in federal court for breach of contract and breach of the duty of good faith and fair dealing in violation of the Texas Insurance Code. Citibank sought to recover: (1) the amount of its settlement less the Bond's deductible; (2) attorneys' fees incurred in defending the GoldenLife case in state court; and (3) damages for its breach of the duty of good faith and fair dealing claim. Progressive took the position

---

[3] Emphasis added.

that the Bond did not cover any part of the sum for which Citibank had been held liable to GoldenLife in state court.

The district court held for Citibank on its breach of contract claim but denied recovery on its claims for attorneys' fees incurred in defending the GoldenLife case in state court and bad faith violations of the Texas Insurance Code. The court stated two alternative bases for its holding that Citibank's settlement payment was a loss covered by the Bond. First, the court credited Citibank's reliance on the doctrine of collateral estoppel, rejecting Progressive's contention that it was not bound by the state court judgment and could contest the Bond's coverage of Citibank's loss by relitigating the issue of Citibank's liability to GoldenLife for honoring purportedly unauthorized endorsements. The court ruled, in the alternative, that even if Progressive were not collaterally estopped from relitigating whether Lindley's endorsements were "unauthorized" for the purpose of the Bond, the district court would hold, as had the state court on the merits, that Lindley's endorsements were "unauthorized" under the Bond. The district court held Progressive liable for the settlement amount less the Bond's deductible, plus pre-judgment and post-judgment interest, and attorneys' fees incurred in federal court, awarding Citibank approximately \$823,000.[4] Progressive timely filed a notice of appeal.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.[5] A motion for summary judgment should be granted only when there is no genuine

---

[4] The district court awarded Citibank: (1) \$695,000 (the \$845,000 Citibank paid to GoldenLife less the Bond's \$150,000 deductible); (2) \$48,540 pre-judgment interest; and (3) \$79,591.84 in attorneys' fees for prosecuting its claim on the Bond against Progressive, for a total judgment of \$823,132.35 (plus post-judgment interest at the rate of 4.99% per annum).

[5] Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

issue of material fact.[6]  In determining whether there is a genuine issue of material fact, we view all facts and draw all inferences therefrom in favor of the non-moving party.[7]

## III.  ANALYSIS

### A.  Collateral Estoppel

The fourth paragraph General Agreement F of the Bond stipulates that if "the Underwriter elects not to defend any causes of action, neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this Bond for loss sustained by the Insured . . . ."  Progressive interprets this language to mean that Citibank is required to prove that Lindley's endorsements were "unauthorized" under the Bond, independently of the state court judgment, viz., the Bond bars the state court's decision from having collateral estoppel effect.  Citibank counters that General Agreement F prevents a third-party judgment or settlement from determining the Bond's coverage, but not Progressive's liability; if an insurer elects not to participate in the defense of such a third-party action, collateral estoppel may still apply to the issue of liability.  Agreeing with Citibank's interpretation, the district court held that Progressive is collaterally estopped from attacking the state court's holding that Lindley's endorsements were unauthorized.  The district court reasoned that General Agreement F explicitly gave Progressive the right to conduct or support Citibank's state court defense and that Progressive had notice of the GoldenLife suit, yet Progressive declined to participate in it.  This, concluded the district court, bound Progressive to the state court determination.

---

[6] Weeks Marine, Inc. v. Fireman's Fund Ins. Co., 340 F.3d 233, 235 (5th Cir. 2003).

[7] Id.

The district court appeared to follow well-established precedent, as an insurer who has the duty to defend a suit against an insured but fails to do so is generally bound by the liability judgment in that suit.[8] The court failed to distinguish, however, between: (1) the ubiquitous general liability policy, under which an insurer is duty bound to defend (as well as to indemnify) the insured, but may do so under a reservation of rights; and (2) the Financial Institution Bond issued in the instant case, under which Progressive had the option (but not the duty) to defend, and if opting not to defend, would do so without waiving its defenses. The third paragraph of General Agreement F of the Bond specifies that, "[i]f the Underwriter elects to defend the Insured," a judgment or settlement of any claim, and all fees and costs, "shall be a loss covered" by the Bond.[9] Thus, under the Bond, Progressive had no legal ability to defend Citibank in state court under a reservation of rights: If Progressive had opted to defend Citibank, it would have committed itself not only to pay Citibank's defense costs but also to pay the full amount of any judgment against it.

---

[8] See, e.g., Columbia Mut. Ins. Co. v. Fiesta Mart, Inc., 987 F.2d 1124, 1127 (5th Cir. 1993) ("It is well-settled in Texas that when an insurer breaches a duty to defend its insured, it is bound, in subsequent proceedings, by a settlement or judgment rendered against the insured. But, of course, an insured's liability and whether there is concomitant coverage are separate and distinct matters; and a prior judgment establishing liability is not binding in a subsequent proceeding on coverage. Furthermore, whether an insurer is bound by a specific finding from the liability action — i.e., whether it is collaterally estopped from contesting that finding-depends upon whether the fact determined in the prior suit was essential to the judgment in the prior suit, and whether the necessary requirement of privity exists between the parties.") (internal quotation marks and citations omitted); see also Enserch Corp. v. Shand Morahan & Co., 952 F.2d 1485, 1493 (5th Cir. 1992); Hartford Cas. Co. v. Cruse, 938 F.2d 601, 605 (5th Cir.1991).

[9] The third paragraph of General Agreement F of the Bond reads in its entirety: "If the Underwriter elects to defend the Insured, in whole or in part, any judgment against the Insured on those counts or causes of action which the Underwriter defended on behalf of the Insured or any settlement in which the Underwriter participates and all attorneys' fees, costs and expenses incurred by the Underwriter in the defense of the litigation shall be a loss covered by this bond."

Progressive chose not to defend Citibank in state court because, inter alia, the language of General Agreement F expressly prevented Progressive from exercising its option to defend Citibank in state court without waiving its rights. It would be inequitable, then, for us to prevent Progressive from having any opportunity to contest its liability for Citibank's loss in court. We hold that the district court erred in applying the doctrine of collateral estoppel here, so Progressive is not bound by the state court's determination that Lindley's endorsements were unauthorized.[10]

B. Unauthorized Endorsements

As collateral estoppel does not apply, we must address the substantive issue presented, viz., whether, for purposes of the Bond's coverage, Lindley's endorsements of the GoldenLife checks to his own account were "unauthorized." The Bond's terms and definitions were not before the state court in the suit between Citibank and GoldenLife, so that court applied the definition of unauthorized endorsement found in the Uniform Commercial Code ("UCC") (as codified in the Texas Business & Commerce Code), i.e., that an endorsement is unauthorized any time it is made "without actual, implied, or apparent authority."[11] In contrast, the Rider defines an "unauthorized endorsement" as an "endorsement not reflected on the appropriate signature card or named in the Insured's records for the account or accounts in question." The state court's determination that Lindley's endorsements were unauthorized under the UCC

---

[10] On appeal, Progressive does not address the related but distinct question whether it should be estopped from contesting the $845,000 settlement amount agreed on by GoldenLife and Citibank after the judgment of liability was rendered but before any determination of the quantum of GoldenLife's loss. Progressive has thus waived any right it might have had to contest the quantum of the GoldenLife/Citibank settlement. See Tex. Commercial Energy v. TXU Energy, Inc., 413 F.3d 503, 510 (5th Cir. 2005) (recognizing that arguments not raised before the district court are waived on appeal). Because we hold that Progressive is not liable for any portion of the GoldenLife/Citibank settlement, however, this point is moot.

[11] TEX. BUS. & COM. CODE ANN. § 1.201(b)(41).

definition is neither in dispute nor legally relevant to this appeal. Rather, we must decide whether the district court correctly held that Lindley's endorsements were "unauthorized" under the Bond.

We believe that the district court's interpretation of the type of "unauthorized endorsement" covered by the Bond was overly expansive.[12] As a general rule, an endorsement is unauthorized if the person signing either (1) had no authority whatsoever to endorse negotiable instruments for the named payee (i.e., the person was not authorized to endorse anything and thus is an unauthorized endorser per se) or (2) had some authority to endorse for the named payee but exceeded the scope of his endorsement authority. The Bond covers the former situation but not the latter. Lindley falls into the latter as he indisputably had some endorsement authority for GoldenLife.

Section 1 of the Rider specifies, inter alia, that, as a condition precedent to Citibank's right of recovery for an "unauthorized . . . endorsement[],"[13] Citibank must "have on file the signatures of all persons authorized to sign" negotiable instruments. As Lindley was listed by name in Citibank's records for GoldenLife's accounts, and as his signature was on record for GoldenLife's

---

[12] The general rule that ambiguities in insurance contracts are to be construed strictly against the underwriter does not apply in this case. As Judge Wisdom noted in Calcasieu-Marine National Bank v. American Employers' Insurance Co., 533 F.2d 290, 295 n.6 (5th Cir. 1976), "banker's blanket bonds" (e.g., Financial Institution Bonds) are often drafted by the joint efforts of associations represented by insurers and insureds. If the banks and the insurers are equally responsible for the language in the "Standard Form" Bond, the general principle that our interpretation of ambiguous contract language favor the insured would be inapt. See also Nat'l Bank of Commerce in New Orleans v. Fid. & Cas. Co. of N.Y., 312 F. Supp 71 (E.D. La. 1970) (Judge Rubin holding that because bankers' blanket bond resulted from joint efforts and negotiations of American Bankers Association and Surety Association of America, bond terms should not be applied hostilely against insurer), aff'd, 437 F.2d 96 (5th Cir. 1971). But cf. Shoals Nat'l Bank of Florence v. Home Indem. Co., 384 F. Supp. 49, 54 (N.D. Ala. 1974) (holding that, although bankers' blanket bond resulted from efforts of two organizations, because "record is absent any evidence that this plaintiff or any association acting for it negotiated the language of the" bond, general rule that ambiguities in insurance contracts are to be construed against underwriter applied).

[13] Emphasis added.

accounts, he clearly had authority to endorse checks payable to GoldenLife. Thus, the Rider's condition precedent was satisfied. Moreover, even though Lindley exceeded the scope of his endorsement authority when he endorsed the sixteen checks at issue to his personal account, he was nevertheless an authorized endorser of GoldenLife checks for some purposes. The language of the Rider makes clear that Bond coverage does not depend on the authorized endorser's purpose for endorsing a check. As Lindley was an authorized endorser, the determination of coverage under the Bond ends there, irrespective of whether he endorsed GoldenLife checks to GoldenLife, or to himself, or to anyone else for that matter.

This is further confirmed by the observation that the Bond covers both forgery ("unauthorized signatures") and "unauthorized endorsements," but specifically excludes coverage of the type of behavior engaged in by Lindley. Section 3 of the Rider expressly limits covered "unauthorized . . . endorsement[s]" to those non-forgery endorsements (i.e., those in which the person signing is the person whose name is signed) that are executed by persons whose signatures or names are not on file at the bank for the account of the customer in question — here, GoldenLife:

> For the purpose of this rider, unauthorized signature or endorsement shall mean a signature or endorsement not reflected on the appropriate signature card or named in the Insured's records for the account or accounts in question.

As Lindley's signature was "reflected on the appropriate signature card" and he was "named in" Citibank's records for the GoldenLife account, this language makes pellucid that Lindley's endorsement of GoldenLife's instruments is not a covered "unauthorized . . . endorsement." Obviously, therefore, the intent of the Bond was to insure only against (1) forged endorsements (not at issue here) and (2) endorsements by totally unauthorized endorsers: It was not intended to insure against endorsements by endorsers like Lindley who are

9

authorized but simply exceed the scope of their endorsement authority. Citibank's broad construction of the Rider would cover many different types of unauthorized-endorsement losses, but the plain wording of the Rider demonstrates that there is nothing an endorser whose signature and identity are on file for the accounts of the depositor in question can do to render his endorsement "unauthorized" for purposes of coverage by the Bond — even if, as here, it might be deemed unauthorized under the UCC.

In short, we are bound by the precise language of the Bond which confirms that the losses resulting from Lindley's activities were not covered. We are well aware that Lindley's endorsements represented attempts to defraud Citibank's customer, GoldenLife, and that Citibank undoubtedly purchased the Bond from Progressive to protect itself from various kinds of fraudulent activity. Citibank and Progressive, however, are large and sophisticated parties, and the only reasonable reading of the Bond leads inextricably to the conclusion that Lindley's endorsements were not "unauthorized" for purposes of the Bond's coverage. Contrary to the district court's holding, Progressive is not liable for Citibank's loss.

## IV. CONCLUSION

We hold that the ruling of the state court in an action to which Progressive was not a party does not estop Progressive from contesting its liability under the Bond. We further hold that Lindley was not an "unauthorized endorser" on GoldenLife's accounts for purposes of the Bond. Thus, Lindley's abuse of his endorsement authority does not come within the Bond's coverage. We therefore reverse the district court and render judgment in favor of Progressive: Citibank shall take nothing from Progressive under the Bond as a result of Lindley's contested endorsements of the GoldenLife instruments.

REVERSED and RENDERED.